## EVERTS *vs.* BROWN.

A covenant in a deed by B. conveying lands to E. in these words—" That said E. shall hold the premises, so that neither I the said B., my heirs or assigns, or any person claiming in or under me or them, or under New Hampshire, shall ever have any right, title, interest or demand thereto, but shall by this deed, be forever barred and excluded," has not the same legal effect, as a covenant of seisin or a covenant of warranty.

To shew a breach of this covenant, it is not necessary to prove an eviction, as in an action on a covenant of warranty, nor is it broken by a dormant title, not put in exercise.

But if a person be in possession, holding under New-Hampshire, adverse to the plaintiff's title, it is a breach of the covenant.

*Addison,*
January,
1797.

THIS was an action of covenant, on a deed of bargain and sale, by the defendant to the plaintiff, of five hundred acres of land in the town of Castleton, butted and bounded, for the consideration of £95, dated November 16, 1774. The covenant was, that the said E. should hold the premises, &c. so that neither the said B., his heirs or assigns, or any person claiming under him or them, or un-

der New-Hampshire, should ever have any right, title, interest or demand thereto, but should by the said deed be for ever barred and excluded.

It was alleged as a breach, 1st, That at the time of the said bargain and sale, the premises were not the property of the said B. 2d, That the said B. had no right to sell. 3d, That he was not seised of the premises, but that some person or persons unknown to the plaintiff, were seised thereof, and that such person or persons, claimed title to, and were duly seised under a title derived from New-Hampshire.

Defendant pleaded that he had not broken his covenant, &c. upon which issue was joined.

*Miller,* for the plaintiff, produced and read a deed from the defendant to the plaintiff, as stated in the the declaration. He then stated that he should not attempt to shew an ouster of the plaintiff from the premises, but to shew that there was a grant of the town of Castleton, in which the premises are described to lie, to a number of proprietors—that the premises had never been severed to the defendant, nor any person under whom he claims.—That one of the publick rights granted in that town to the first settled minister, had been surveyed on a part of this 500 acres, and that there were persons in possession by title, adverse to that derived from the defendant.

*Darius Chipman,* for defendant, objected that this is in its nature and effect a covenant of warranty, and a breach of it can be proved by nothing short of an eviction, or, that which is tantamount.

For the plaintiff it was answered, that this covenant, at least, resembles a covenant of seisin—that it would therefore be sufficient, to shew a breach, to prove that some person under an adverse title, against which the defendant had covenanted, was in possession.

The Court were of opinion that this was not altogether in the nature of a covenant of warranty, and that it would be sufficient for the plaintiff to shew, that some person held the premises, by a title adverse to the title conveyed by the defendant in his deed, within the words of the covenant.

The plaintiff's counsel then produced and read a charter of the

*Addison, January, 1797.*

*Everts vs. Brown.*

13

*Addison,*
January,
1797.

Everts
*vs*
Brown.

town of Castleton, from the Governor of New-Hampshire to sixty proprietors, dated the 22d day of September, 1761, and further offered to give in evidence a survey of the land described in the aforesaid deed, or a part of it, to the minister's right, and depositions to prove that such survey had been made.

To this, the counsel for the defendant objected.

The Court was of opinion, that the survey could have no effect, unless it had been made in pursuance of a regular and legal division of the town, which can be shewn by the proprietors' records only.

The plaintiff's counsel then offered to prove, that at the time of the sale from the defendant to the plaintiff, 16th Nov. 1764, there was no division of the town, therefore the proprietors will appear to be seised and in possession by virtue of a title under New-Hampshire, adverse to the title supposed to have been conveyed by the defendant.

The Court were of opinion that it was not pertinent to give such negative proof.

The Chief Justice observed, that the proof, as it now stands, is of an undivided township of land. The plaintiff may shew a legal division, and that the land described in his deed from the defendant, was legally divided to some other proprietor, in opposition to his claim, under the defendant's deed, which will prove a breach. Or the defendandt may, in my opinion, be permitted to shew himself a proprietor, and that in the division, the land in question was severed to the plaintiff, under his title, in which case there could be no breach, as it relates to a title under New-Hampshire. But this would be proper only to rebut the plaintiff's evidence.

The counsel for defendant then offered to prove that the defendant was owner of several proprietors' shares in the town of Castleton. To this there was an objection, and the Court were of opinion, that it could have no effect, unless a division could also be shewn, by which, it should appear that the land in question had been divided to the defendant's rights—that the defendant would have a right to fortify himself if he was able, with proof of a full right by proprietorship and division.

The counsel for defendant then offered to prove that the plaintiff

had sold part of the 500 acres to A. Landon, whose estate had, by a legal sentence, been confiscated to the use of this State, and the land he had so purchased of the plaintiff, was sold as the estate of A. L. by a commissioner of the State to one D. who now holds the same. They then read a deed from the plaintiff to A. L. of 100 acres, part of the premises, dated June 10, 1776, and a copy from the records of the Court of confiscation, by which it appeared that the estate of A. L. had been confiscated to the use of the State of Vermont.

*Addison,*
*January,*
*1797.*

Everts
*vs.*
Brown.

A deposition was then offered to prove that the said 100 acres was sold by a commissioner of the State to D.

*By the Court.* It is necessary first to shew the appointment of the commissioner, *either by* a record of his appointment, or his commission, and to shew the sale by his deed. Nothing short of that can be admitted.

CHIPMAN, Ch. J., in his charge to the Jury, after stating the evidence, observed—In the determination of this cause, it will be necessary to fix the true construction of the covenant contained in the deed, from the defendant to the plaintiff; the words of which are, "To have and to hold, &c. so that I the said B., my heirs or assigns, nor any person claiming under New-Hampshire, shall ever have any right, title, interest or demand thereto, but shall, by these presents, be for ever barred and excluded."

It is not precisely a covenant of warranty, nor is it a covenant of seisin; yet it partakes of the nature of that covenant, so that within certain limits, it is an engagement against every existing right, title, &c. paramount and adverse to the title supposed to have been conveyed by the defendant, although the same may never have been exercised or prosecuted to the actual disturbance of the plaintiff.

The plaintiff has proved that the township of Castleton, in the year 1761, was granted to sixty proprietors as tenants in common. No division appears to have been made, either before or since the defendant's sale to the plaintiff; so that there appears to be an adverse title in the proprietors under the New-Hampshire grant. For if the defendant should appear to have the right of one or more of those tenants in common, yet, before a legal division or partition, he could not as against the other tenants, sell and convey the title to any particular tract by metes and bounds. This is giving the

*Addison,*
January,
1797

Everets
*vs.*
Brown.

covenant the construction of a covenant of sesin, which the parties seem to have avoided in drawing the deed.

On the other hand, for the defendant it is contended that this covenant must have the construction of a covenant of warranty.—That it amounts to a covenant against the exercise of an adverse right, &c. derived under the defendant, his heirs or assigns, or, under New-Hampshire, by any person, to the actual prejudice of the plaintiff's right.—That of course, nothing short of the exercise and prosecution of such adverse right, operating as an actual ouster of the plaintiff's right in the granted premises, can prove a breach of the covenant.

In construing covenants, we should endeavour to discover the true meaning of the parties to the contract, and this we must collect from the contract itself, giving due weight to all the operative words connected with the covenant.

Considering it in this connexion, it seems to me, that the true construction of the covenant is, that the defendant in his deed of conveyance, covenanted against every right, title, &c. under him, his heirs and assigns, or under the New-Hampshire grant, whereby any person should actually defeat, in whole or in part, the plaintiff's title as derived from the defendant, and there was no view of engaging against any dormant right, title or claim, unless put in exercise to the prejudice of the plaintiff's claim.

To this construction we are led, by attending to the concluding words of the covenant, in connexion with what precedes—" but shall be by these presents, for ever barred and excluded."—This, it seems to me, qualifies the generality of the covenant, and limits it to extend to adverse rights, &c. exercised or prosecuted, not to those which are suffered to lie for ever dormant, so that there can be no opportunity of determining whether they might be barred and excluded by the defendant's deed or not. Upon this construction, these words will operate agreeably to a known rule in the construction of covenants—that the generality of a covenant may be restrained by particular expressions. These last words must have this effect, as it appears to me, or be considered as mere surplussage. The covenant then will have merely the effect of a covenant for quiet enjoyment, under certain limitations.

If we take this to be the true construction, the plaintiff has not

shewn a breach of the covenant; for nothing appears but that the plaintiff, or those who derive through him or his title, still hold and enjoy the land described in the deed from the defendant.

<div align="right">

*Addison.*
January,
1797.

Everts
*vs.*
Brown.

</div>

<div align="center">

Verdict for the defendant.